UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| AMBER MARIE LETTS CORDOVA, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:11-CV-210 RM |
| ) | |
| UNIVERSITY OF NOTRE DAME ) | |
| DU LAC and CHARLES E. BARBER, ) | |
| ) | |
| Defendants ) | |

OPINION and ORDER

Following the June 23, 2011 dismissal of Amber Cordova's complaint, she filed a timely amended complaint alleging that the University of Notre Dame and Dr. Charles Barber violated her rights under Titles I and III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d-5, the due process and equal protection clauses of the United States and Indiana Constitutions, and Indiana tort law by engaging in discriminatory practices based on her disabilities. Ms. Cordova claims that after being admitted to Notre Dame's Graphic Design Masters Program and hired as a graduate assistant at the University in 2008, she was subjected to harassing and discriminatory conduct and, in 2009, was "effectively expelled from the Program" and terminated from her employment based on her disabilities. Ms. Cordova seeks an order enjoining the "defendants from engaging in further violations of Federal

and State discrimination laws, including but not limited to the ADA, Rehabilitation Act, and HIPAA;" requiring the "defendant" to rehire and reinstate her with commensurate compensation, benefits, and seniority, or, alternatively, to pay her all lost compensation; directing the "defendants" to pay her liquidated damages; and directing the "defendant" to pay her actual, compensatory, and punitive damages, pre- and post-judgment interest, attorney fees, and costs.

The University of Notre Dame and Dr. Barber have moved to dismiss Ms. Cordova's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Ms. Cordova filed her response to the motion, and the defendants filed their reply. For the reasons that follow, the court grants the motion as to Dr. Barber in its entirety and as to the University in part.

*Legal Standard*

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint that states no claim upon which relief can be granted. When deciding a Rule 12(b)(6) motion, the court must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of the plaintiff without engaging in fact-finding. Reger Dev., LLC v. National City Bank, 592 F.3d 759, 763 (7th Cir. 2010); Stakowski v. Town of Cicero, 425 F.3d 1075, 1078 (7th Cir. 2005). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (*quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Under the pleading standard of Rule 8(a), a complaint needn't contain "detailed factual allegations," but the complaint's allegations "must be enough to raise a right to relief above the speculative level" and give the defendant fair notice of the claims being asserted and the grounds upon which they rest. Bell Atl. v. Twombly, 550 U.S. at 555; *see also* Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009) ("First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.").

*ADA and Rehabilitation Act Claims: Counts I – VIII*

*A. Claims against Dr. Barber*

Dr. Barber argues that he can't be individually liable to Ms. Cordova under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112, because that statutory section doesn't provide for individual liability, or under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, because he doesn't operate a place of public accommodation, or under Section 504 of the Rehabilitation, 29

3

U.S.C. § 794, because, like Title I and Title III, courts have uniformly held that individual liability isn't appropriate. Ms. Cordova responds that she doesn't contest Dr. Barber's motion to dismiss her claims against him in Counts I - VII of the amended complaint, so the court dismisses Ms. Cordova's ADA and Rehabilitation Act claims as to Dr. Barber. *See* EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279–1282 (7th Cir. 1995) (rejecting individual liability under ADA); Dent v. City of Chicago, No. 02 C 6604, 2003 WL 21801163, at *1 (N.D. Ill. Aug. 1, 2003) ("[T]he law is well-settled that there is no individual liability under Title VII, the ADA, the Rehabilitation Act, and the ADEA."); Vollmert v. Wisconsin Dep't of Transp., No. 97-C-547-C, 2000 WL 34235982, at *3 (W.D. Wis. Aug. 14, 2000) ("[I]ndividuals do not seem to fit within the Rehabilitation Act's provision for suits against 'any program or activity receiving Federal financial assistance,' 29 U.S.C. § 794.").

*B. Claims against the University*

The University maintains that Ms. Cordova hasn't alleged a disability with sufficient particularity to state a claim under the Americans with Disabilities Act and the Rehabilitation Act. In reliance on decisions from various courts that have granted motions to dismiss where the plaintiff didn't specify his or her disability and limiting major life activity, the University says Ms. Cordova hasn't specified a disability or alleged that she is limited in any major life activity so her claims in Counts I – VIII should be dismissed. In response, Ms. Cordova summarily

4

concludes that the facts she alleged in the amended complaint are sufficient to support her claims under the ADA and the Rehabilitation Act and to inform the defendants of the claims being alleged. The court can't agree.

The only allegation of a disability in the 144-paragraph amended complaint is Ms. Cordova's conclusory statement that she "has disabilities covered by the ADA and Rehabilitation Act." Amd. Compl., ¶ 8.[1] She hasn't identified what her disability is (or disabilities are), *see* Paine v. Johnson, No. 06 C 3173, 2008 WL 4890269, at *16 (N.D. Ill. Nov. 7, 2008) ("To state a claim under the ADA, a plaintiff must first allege a disability."), nor has she alleged that she is substantially limited in a recognized major life activity. *See* Cassimy v. Board of Educ. of Rockford Public Schools, 461 F.3d 932, 936 (7th Cir. 2006) ("The critical question in every case is what was the effect of the impairment on the life of the individual."); Foley v. City of Lafayette, Ind., 359 F.3d 925, 928 (7th Cir. 2004) ("Rehabilitation Act claims are analyzed under the same standards as those used for ADA claims.").

Recognizing that disagreement exists as to the amount of detail necessary to allege a disability claim, the court concludes that the allegations of Ms. Cordova's complaint are insufficient to put the defendants on notice of her disability claims. *Compare* Jackson v. Northwestern Univ. School of Law, No. 10-

---

[1] Although paragraph 34 of the amended complaint alleges that Ms. Cordova received an e-mail from Mr. Howland that included the following sentence: "In light of your recent disclosure of ADHD to your professor I feel it would be more appropriate to plan a meeting to discuss what reasonable accommodations could be provided," that paragraph can't be read as alleging a disability.

5

C-1986, 2010 WL 5174389, at *3 (N.D. Ill. Dec. 15, 2010) (dismissing complaint because "[plaintiff] does not plead what her disability is or how it substantially limits one or more major life activities. She simply makes the conclusory statement that it does."); Walton v. U.S. Steel Corp., No. 2:10-CV-188, 2010 WL 3526263, at *3 (N.D. Ind. Sept. 3, 2010) (dismissing ADA claim where plaintiff didn't identify his injury or alleged disability or allege facts demonstrating that he was covered by the ADA); Knox v. Rhodes, No. 08-cv-277, 2010 WL 1418568, at *3 (S.D. Ill. Apr. 6, 2010) ("Knox's broad assertions that he is a qualified individual are too generic to meet the pleading requirements of *Twombly*. In fact, these allegations represent the generic legal labels and conclusions explicitly condemned by *Twombly*."); Paine v. Johnson, No. 06 C 3173, 2008 WL 4890269, at *16 (N.D. Ill. Nov. 7, 2008) (dismissing ADA claim that didn't "allege the nature and severity of [plaintiff's] condition, its duration or expected duration, or its permanent or long term impact or its expected impact on her ability to conduct her major life activities"), *with* Mattice v. Memorial Hosp. of South Bend, Inc., 249 F.3d 682, 684 (7th Cir. 2001) (Plaintiff "alleged that he 'has a history of a significant impairment of major life activities of sleeping, eating, thinking, and caring for himself in addition to other life activities significantly impaired by the existence of and care and treatment for panic disorder, severe depression and suicidal ideation.' These allegations are sufficient to state a claim under the ADA."); Homeyer v. Stanley Tulchin Assocs., Inc., 91 F.3d 959, (7th Cir. 1996) (allegations that chronic severe allergic rhinitis and sinusitis substantially impaired plaintiff's ability to breath and

work found sufficient to plead an ADA claim); Hughes v. Colorado Dep't of Corrections, 594 F. Supp. 2d 1226, 1240 (D.Colo. 2009) ("Hughes identifies an impairment of which the State defendants were allegedly aware and alleges that such impairment constitutes a disability under the ADA. . . . At the pleading stage, . . . Hughes' allegation regarding disability is sufficient.").

Ms. Cordova's allegations in Counts I – VIII of the amended complaint are insufficient to state a claim against the University of Notre Dame under the ADA or the Rehabilitation Act, and the court will grant the University's motion to dismiss those claims.

*HIPAA Claim: Count IX*

The defendants argue that Ms. Cordova's claims under the Health Insurance Portability and Accountability Act of 1996 should be dismissed because, as the defendants correctly note, the Act doesn't provide for a private right of action: only the Secretary of Health and Human Services or a state's attorney general may pursue remedies for violations of the statute. 42 U.S.C. § 1320d-5(d); *see also* Doe v. Board of Trustees of Univ. of Illinois, 429 F. Supp. 2d 930, 944 (N.D. Ill. 2006) ("Every court to have considered the issue . . . has concluded that HIPAA does not authorize a private right of action."); Martin v. Dupont Hosp., No. 1:09-CV-47, 2010 WL 2346285, at *4 (N.D. Ind. June 7, 2010) ("[C]ourts that have considered the question of whether HIPAA provides a private right of action have concluded that it does not.").

7

Ms. Cordova responds that she doesn't contest the defendants' request for dismissal of Count IX, so the court will dismiss Count IX as to both defendants.

*Breach of Implied Contract – Count X*

*A. Claims against Dr. Barber*

Ms. Cordova alleges in Count X that she entered into an implied contractual agreement with the "defendants" based on promises made by the "defendants" in "the student handbook, defendant's anti-discrimination policy, and in its statement to provide a learning environment free of discrimination and in compliance with federal anti-discrimination laws." Amd. Compl., ¶¶ 121-122. While Ms. Cordova doesn't specify which defendant she's referring to when making allegations against a single "defendant," her amended complaint contains no allegations in Count X or in any of the other 138 paragraphs that the alleged promises upon which she relies – promises made in the University's policy statements, student handbook, and/or employee handbook – could be attributable to Dr. Barber. *See* Amd. Compl., ¶ 22 ("Defendant promises to comply with all requirements of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act, both in its student and employee handbooks and in its assurances to the federal government of the United States of America when it receives federal funding to support its programs."). Because Count X of the amended complaint doesn't provide Dr. Barber with notice of the claims against him, *see* <u>Collins v. Kibort</u>, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot

8

state a claim against a defendant by including the defendant's name in the caption."), and doesn't contain enough factual content to allow the court to draw the reasonable inference that Dr. Barber is liable to Ms. Cordova for breach of an implied contract, Ashcroft v. Iqbal, 129 S. Ct. at 1949, the court will dismiss the claims against Dr. Barber in Count X.

*B. Claims against the University*

Ms. Cordova's allegations in Count X are that she entered into an implied contract whereby the University "would provide educational instruction, employment in a nondiscriminatory manner, comply with the ADA and Rehabilitation Act, and provide certain benefits; Cordova would complete the Program, pay any expenses not covered by her financial arrangement, and serve as a graduate assistant." Amd. Compl., ¶ 121. She says she upheld her promises, but the University did not. Ms. Cordova concludes that the University's failure to uphold its part of the bargain constitutes a breach of contract that subjected her to damages. Amd. Compl., ¶¶ 123-124.

The University argues that a breach of contract claim by a student against a university is recognized only in narrow circumstances not alleged by Ms. Cordova. The University says Ms. Cordova hasn't pointed to any identifiable contract or promise, nor has she alleged that the University failed to provide a promised benefit – she merely challenges the manner in which the University performed its alleged promises. To the contrary, Ms. Cordova alleges that the

University's student handbook and anti-discrimination policy contain promises that the University would "provide a learning environment free of discrimination and in compliance with federal anti-discrimination laws," and she further alleges that the University didn't perform in that manner. Amd. Compl., ¶ 122.

Even recognizing that in Indiana the issue of whether a student handbook can qualify as a promise sufficient to support the existence of a contract is doubtful, Orr v. Westminster Village North, Inc., 689 N.E.2d 712, 721 (Ind. 1997), and that courts must show great deference to a university's academic and professional decisions, Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 225 (1985), the court concludes that Ms. Cordova has alleged "sufficient facts to state a 'plausible' a claim to relief" under Indiana law against the University. Edgenet, Inc. v. GS1 AISBL, 742 F. Supp. 2d 997, 1010 (E.D. Wis. 2010); *see also* Williams v. Potter, No. 2:06-CV-353, 2008 WL 4449549, at *2 (N.D. Ind. Sept. 25, 2008) ("The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case.").

Lastly, to the extent Ms. Cordova is claiming in Count X that the University's breach also violated unidentified federal law and her "constitutionally protected rights," her conclusory allegation in this regard "fails to contain enough information to state a cognizable claim. . . . [A] complaint stating only 'bare legal conclusions,' even under notice pleading standards, is not enough to survive a Rule 12(b)(6) motion." Bissessur v. Indiana Univ. Bd. of Trustees, 581 F.3d 599, (7th Cir. 2009) (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).

The motion to dismiss Count X is denied only with respect to Ms. Cordova's claim under Indiana law for breach of implied contract against the University.

*Violations of the United States and Indiana Constitutions – Counts XI and XII*

Ms. Cordova alleges that the University and Dr. Barber violated her due process and equal protection rights under unspecified sections of "the U.S. and Indiana Constitutions." Amd. Compl., ¶¶ 126-136. The defendants say her claims should be dismissed because neither of them is a state actor – noting that Ms. Cordova alleges that the University is a "private university," Amd. Compl., ¶ 3, and Dr. Barber is an individual, Amd. Compl., ¶ 4 – and the complaint alleges no facts that would justify treating them as state actors. In reliance on <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 840-841 (1982), the defendants say that even Ms. Cordova's assertion in paragraph 22 that the University "receives federal funds" is insufficient to convert the University, an otherwise private entity, into a state actor.

Ms. Cordova responds that the "[f]acts alleged in the complaint give rise to claims that [her] rights protected by the constitutions of the United States and Indiana were violated" and her claims for state and federal constitutional violations are "cognizable, actionable and properly before the court." Resp., ¶ 2. The court can't agree.

The Fourteenth Amendment of the United States Constitution provides in part that "[n]o State shall . . . deprive any person of life, liberty, or property

without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." "Since [the Supreme] Court's decision in the Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883), 'the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States.'" Blum v. Yaretsky, 457 U.S. 991, 1002 (1982) (*quoting* Shelley v. Kraemer, 334 U.S. 1, 13 (1948)); *see also* Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961) ("It is clear, as it always has been since the Civil Rights Cases, supra, that individual invasion of individual rights is not the subject-matter of the amendment and that private conduct abridging individual rights does no violence to the Equal Protection Clause unless to some significant extent the State in any of its manifestations has been found to have become involved in it."); Indiana High School Athletic Ass'n, Inc. v. Carlberg, 694 N.E.2d 222, 241 (Ind. 1997) (same analysis is applicable to claims brought under Due Process Clause of United States Constitution and Due Course of Law Clause of Indiana Constitution); Phelps v. Sybinsky, 736 N.E.2d 809, 818 (Ind. Ct. App. 2000) ("The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government." (*quoting* 3 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law § 18.2, at 208 (3d ed. 1999)).

Because the actions complained of by Ms. Cordova weren't taken by a government or a government agency or agent, she hasn't alleged that state action was involved, and the Fourteenth Amendment "erects no shield against merely

private conduct, however discriminatory or wrongful," Shelley v. Kraemer, 334 U.S. 1, 13 (1948), Ms. Cordova hasn't stated a claim upon which relief can be granted under either the United States Constitution or the Indiana Constitution. The University and Dr. Barber are entitled to dismissal of the claims in Counts XI and XII of her amended complaint.

*Violation of Indiana Common Law – Count XIII*

Ms. Cordova alleges in Count XIII that the "defendants' refusal to provide the services contracted and paid for by [her] constituted a conversion as defendants retained specific funds directly attributable to [her] without providing the promised services." Amd. Compl., ¶ 138. The defendants say this claim should be dismissed because Ms. Cordova's allegation doesn't state a claim for conversion and, under Indiana law, money can't be converted.

A claim of conversion requires the plaintiff to allege that she "is the owner of property, is entitled to possession of the property, that defendant converted the property to his own use, and that the plaintiff has been damaged sufficient to support a claim of conversion." Schwartz v. Oberweis, 826 F. Supp. 280, 287 (N.D. Ind. 1993); *see also* Estate of Verdak v. Butler Univ., 856 N.E.2d 126, 136 (Ind. Ct. App. 2006) ("To state a valid claim for conversion, and thus survive a motion to dismiss, Butler must allege facts showing that it has 'an immediate, unqualified right to possession resting on a superior claim of title' and establish the 'appropriation of personal property by another for that party's own use and benefit

in exclusion and defiance of the owner's rights.'" (*quoting* Shourek v. Stirling, 621 N.E.2d 1107, 1109 (Ind. 1993)). While Ms. Cordova says her complaint "properly pleads" her claims, her amended complaint contains no allegation that either the University or Dr. Barber appropriated any of her personal property for their own use. In addition, Ms. Cordova hasn't alleged that Dr. Barber was in a position to receive or retain funds relating to her education or employment with the University, and her sole claim that the University retained funds not owned by, but merely "directly attributable" to her is insufficient to state a claim for conversion.

Ms. Cordova also alleges in Count XIII that she reasonably relied on the "defendants' promise to provide educational instruction with out discrimination and in compliance with the ADA and the Rehabilitation Act," and "[i]njustice can only be avoided by enforcing the promise made under the theory of promissory estoppel." Amd. Compl., ¶ 139. The defendants maintain Ms. Cordova's "suggestion" of a promissory estoppel claim is insufficient because she merely recites the elements of a promissory estoppel claim without any factual support. Again, Ms. Cordova responds that her complaint "properly pleads" her claims.

The allegations of paragraph 139 set forth the elements of a promissory estoppel claim,[2] but the allegations don't meet the requirement that "[w]hen

---

[2] *See* Stone v. St. Vincent Hosp. and Health Care Center, No. 1:11-cv-225, 2011 WL 5593683, at *3 (S.D. Ind. Nov. 17, 2011) ("Under Indiana law, the elements of promissory estoppel are: '(1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise.'") (*quoting* Brown v.

14

estoppel is relied upon as an element of a cause of action, it must be pleaded with particularity, with every essential fact set forth, since nothing can be supplied by inference or intendment." Norwest Bank, N.A. v. Federal Kemper Life Ins. Co., 110 F. Supp. 2d 774, 778 (N.D. Ind. 2000). Ms. Cordova states in Count XIII that she "incorporates paragraphs 1 through 136 of her complaint," but requiring the defendants and the court to pore through those paragraphs in an attempt to piece together facts that might support her claim doesn't comply with the requirement that "a claim of promissory estoppel must be pled with particularity." Norwest Bank, N.A. v. Federal Kemper Life Ins. Co., 110 F. Supp. 2d 774, 778 (N.D. Ind. 2000). Ms. Cordova's lone factual allegation that the "defendants" promised to provide educational instruction without discrimination is insufficient to state a claim of promissory estoppel. *See* Swanson v. Citibank, N.A., 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." (emphasis in original)).

The court will grant the motion of the University and Dr. Barber to dismiss Count XIII of the amended complaint.

*Intentional Infliction of Emotional Distress – Count XIV*

---

Branch, 758 N.E.2d 48, 52 (Ind. 2001)).

Ms. Cordova's final claim is for intentional infliction of emotional distress. The University and Dr. Barber say that Ms. Cordova's allegations don't meet the "extreme and outrageous" threshold required under Indiana law, so Count XIV should be dismissed. Ms. Cordova says in response that her claim is viable under Indiana law and her complaint properly pleads her claim.

An intentional infliction of emotional distress claim under Indiana law occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." Cullison v. Medley, 570 N.E.2d 27, 31 (Ind. 1991). "[A] complaint must allege conduct that is so extreme and outrageous as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Tucker v. Roman Catholic Diocese of Lafayette-In-Indiana, 837 N.E.2d 596, 603 (Ind. Ct. App. 2005). The intent to harm the plaintiff emotionally constitutes the basis for the tort. York v. Fredrick, 947 N.E.2d 969, 976 (Ind. Ct. App. 2011).

Ms. Cordova alleges in Count XIV that the "defendants acted intentionally or recklessly in the treatment and harassment of [her]" and their conduct was "extreme and outrageous." Amd. Compl., ¶¶ 141-142. Without deciding, as the University and Dr. Barber request, whether any of actions or inactions alleged by Ms. Cordova constitute the extreme and outrageous conduct necessary to prevail on a claim of intentional infliction of emotional distress, the court concludes that Ms. Cordova hasn't alleged that the University and/or Dr. Barber acted with the intent to emotionally harm her. *See* Collins v. Purdue Univ., 703 F. Supp. 2d 862,

873 (N.D. Ind. 2010) (dismissing claim where plaintiff "failed to state the necessary intent to cause emotional distress"); Lachenman v. Stice, 838 N.E.2d 451, 457 (Ind. Ct. App. 2005) ("[T]here is also nothing in the record which would support a reasonable inference to the effect that the [defendants] intended to cause [the plaintiff] emotional distress by their behavior."). Too, Ms. Cordova's legal conclusion that the defendants' conduct was "extreme and outrageous" is insufficient to state a claim. *See* Skinner v. Metropolitan Life Ins. Co., No. 3:09-CV-394, 2010 WL 2175834, at *14 (N.D. Ind. May 27, 2010) ("What bars [plaintiff's] claim for intentional infliction of emotional distress is her failure to provide factual allegations that could plausibly give rise to an inference that MetLife's conduct was extreme or outrageous.").

The motion of the University and Dr. Barber to dismiss Count XIV of the amended complaint for failure to state a claim will be granted.

*Conclusion*

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART the defendants' motion to dismiss Ms. Cordova's amended complaint [docket # 44] as follows: (1) the motion of defendant Charles E. Barber is GRANTED in its entirety and all claims of the amended complaint as to Dr. Barber are dismissed; and (2) the motion of defendant University of Notre Dame Du Lac is (a) GRANTED as to the claims in Counts I – IX and XI – XIV of the amended complaint and (b)

DENIED solely with respect to the claim in Count X of the amended complaint for breach of implied contract under Indiana law against the University.

In any civil action in which the court has original jurisdiction, 28 U.S.C. § 1367 provides that the court shall have "supplemental jurisdiction over all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Ms. Cordova's remaining state-law claim against the University is just such a claim. "Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." <u>Miller v. Herman</u>, 600 F.3d 726, 738 (7th Cir. 2010). That course is appropriate here. Ms. Cordova's sole remaining claim hasn't been addressed in any meaningful way, and resolution of what constitutes an implied contract under Indiana law is best left to Indiana's courts.

SO ORDERED.

ENTERED:   December 13, 2011

/s/ Robert L. Miller, Jr.
Judge, United States District Court